[No. 21857. Department Two. July 23, 1929.]

JOHN G. MATTHEWS *et al., Respondents and Cross-Appellants,* v. GEORGE W. SAULSBERRY, *Appellant and Respondent.*[1]

*Marion Garland* and *W. D. Lambuth,* for appellant.

*James W. Bryan* and *Smith & Matthews,* for respondents and cross-appellants.

FRENCH, J.—From a judgment rendered in this case, both parties are appealing, and they will therefore be referred to as plaintiff and defendant.

[1]Reported in 279 Pac. 400.

For many years plaintiff and defendant had been very friendly, and had many business transactions. Defendant, Saulsberry had, from time to time and on many occasions, loaned to the plaintiff Matthews, money, and in October, 1924, plaintiff deeded to the defendant, among other property, thirty-one acres of land situate in Kitsap county, Washington. Other land than that in Kitsap county was sold and the proceeds applied on plaintiff's indebtedness, and in the year 1926, it seems to have been agreed between the parties that the defendant should plat and improve the Kitsap county land, put the same on the market and sell sufficient thereof to pay the indebtedness due the defendant. The exact nature of the transaction between these two men is not altogether clear from the record. They seem at that time to have been friends, and to have implicitly trusted each other, and it is practically impossible to determine from the record just exactly the nature of the transaction between them.

In July, 1928, the plaintiffs, Matthews and wife, commenced this action against the defendant, Saulsberry, alleging that they were the owners of the thirty-one acres of land in Kitsap county, subject to the rights of such persons as had purchased some of the lands on conditional sales contracts; alleging that it had been deeded to the defendant, Saulsberry, to secure the payment of certain indebtedness, and for advances made for the purpose of paying taxes, platting, improving, and for the construction of roads on the property; alleging generally that it was understood and agreed that the defendant should subdivide and plat such property, sell the same, and pay himself such money as was due him from the plaintiffs.

The defendant answered by general denial. The matter came on for trial, and the trial court took testi-

mony for some considerable time, examined the correspondence between the parties, determined that the land in question was held only as security, adjourned the hearing and required the defendant to prepare and file a complete statement of the account, showing moneys he had received and disbursed, and for what purpose; required the defendant to set forth in full all his claims, which being done, thereafter the matter came on again for hearing on the account as prepared by the defendant.

The court disallowed certain items of the defendant's account, such items being generally certain commission claims, claims for preparing contracts, canceling contracts, certain clerical hire, and like items, and allowed certain other items of expense; made very voluminous and complete findings of fact setting forth therein some seventy-five items of allowable expense and disallowing certain other items; setting forth many items of receipts, and finally deciding that there was due to the defendant the sum of $3,656.88, less any amount that might be collected on the contracts since the rendering of the last account; requiring the plaintiffs to pay this amount, and requiring the defendant to turn over to the plaintiffs the outstanding contracts and to deed to the plaintiffs all of the property with the exception of two lots, the situation regarding these two lots being as follows: The defendant had improved these two lots by the erection of a very substantial residence thereon.

All of the parties seem to agree that, in order to sell this property, which was, at the time defendant started this plan of disposing thereof, unimproved and inaccessible land, it was necessary, or at least advisable, as a part of the advertising plan or campaign for selling it, to make certain substantial improvements, including the erection of a sea wall, the building of cer-

tain roads, and the erection of the house in question, all of which seems to have been a part of this general plan. The record seems fairly clear that, at the time the defendant began his activities in subdividing the land, it was not worth any more than the amount due the defendant, and that, to make the value, it was necessary to subdivide and spend a considerable amount of money in improving the property before the same would be salable. The defendant claimed that he was entitled to be reimbursed for the value of the house in question. The trial court, in lieu of giving him judgment for the value of the house, gave him the house and the land on which it was situated.

The defendant appealed, raising many assignments of error. But no exceptions were taken to the findings of fact made by the trial court, and there is therefore nothing for us to review, it being conceded that the findings abundantly support the judgment.

On the cross-appeal by plaintiffs, the principal question raised is the action of the trial court in awarding to defendant the ground on which this house stands. It must be remembered, however, that this was purely an equitable action. It was the endeavor of both parties to market this property, and thus relieve the plaintiffs from the burden of their indebtedness. It seems to have been the theory of the trial court, and in this we think he was right, that the erection of this house tended to make the entire property salable. We think it was as legitimate an item of expense as was the platting of the property, or constructing the roads on the property, and one for which the defendant was entitled to be reimbursed. It is apparent from reading the record that this house and the land on which it stands were worth no more than the amount paid by the defendant for the erection of the building, and, while it probably would have been bet-

ter to have allowed the defendant this item of expense, yet allowing him the land in question is but a different method of recompensing him for his outlay.

The deed given to these thirty-one acres of land was probably, in the first instance, given as a mortgage, but the parties by their subsequent conduct and by their agreement that the land should be, by the defendant, improved, platted and sold, have, practically speaking, created a trust relationship. Indeed, plaintiffs seem to have recognized that such a relationship existed, because the entire theory of the plaintiffs' case, as outlined by the complaint, is that the action is an equitable action for an accounting, and the plaintiffs seem to, at all times, have acquiesced in and recognized the defendant's right to sell and transfer this land or the various parts thereof, and to make the necessary expenditures for platting, road building, and other improvements, and seem to have been willing at all times that the defendant should be reimbursed for his actual expenditures. It abundantly appears that the defendant acted in good faith in erecting the house in question, and subsequent events would seem to indicate that the expenditures made by defendant and allowed by the trial court redounded greatly to the value of the property and to the benefit of the plaintiffs. The house and the land upon which it stands were awarded to the defendant in lieu of a money judgment to which he otherwise would be entitled, and the indebtedness due from the plaintiffs was reduced by a like amount. The deed given being treated by the parties more in the nature of a trust deed than as a mortgage, we can not say that the trial court did not, in so far as this item is concerned, treat the parties equitably.

The other items complained of by the plaintiffs have been carefully checked with the record, they involve questions of fact and we think that the decree entered

160

by the trial court is in every respect just and equitable.

The trial court required from Saulsberry a supplemental account. Undoubtedly many collections have been made during the time this appeal has been pending. Upon receipt of the remittitur, Saulsberry will be required to furnish a full and complete supplemental account, and both parties will be given opportunity to be heard thereon, and the amount due Saulsberry will then be finally determined. Otherwise, the judgment is affirmed with costs to plaintiffs Matthews.

TOLMAN, MILLARD, PARKER, and MAIN, JJ., concur.